UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WINN-DIXIE STORES, INC.,

    Plaintiff,

 v.              Case No. 04-C-0794

SCHREIBER FOODS, INC.,

    Defendant.

---

**MEMORANDUM AND ORDER**

---

   This case is before the court pursuant to its diversity jurisdiction. *See* 28 U.S.C. § 1332. Defendant Schreiber Foods, Inc. has moved to dismiss all ten counts of the original complaint. Plaintiff Winn-Dixie Stores, Inc., opposes the motion, and has moved to substitute a twelve-count amended complaint for the original complaint. Schreiber opposes the motion to amend on the ground of futility. For the following reasons, Winn-Dixie's motion to amend will be granted, and Schreiber's motion to dismiss will be granted in part and denied in part.

**BACKGROUND**

   The following facts are set forth in the light most favorable to Winn-Dixie, the party opposing the motion to dismiss. *Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). In January 1997, Schreiber filed a patent-infringement suit against Beatrice Cheese, Inc., Kustner Industries, S.A., and Great Lakes Cheese, Inc.(none of whom is a party to this case). (Prop. Am. Compl. ¶ 1.) Schreiber alleged in those cases that it owned U.S. Patent Nos. 5,440,860 and 7,701,724, and that Kustner manufactured, and Beatrice and Great Lakes

used, machines infringing those patents. (Prop. Am. Compl. ¶ 8.) On August 24, 1998, Schreiber obtained a jury verdict in excess of $26 million against those defendants. While initially set aside by the trial court (Prop. Am. Compl. ¶ 10), the verdict was reinstated by the Federal Circuit on February 27, 2002. (Prop. Am. Compl. ¶ 13.)

Meanwhile, in December 2001, Schreiber and Winn-Dixie began negotiating the sale to Schreiber of a plant owned by a subsidiary of Winn-Dixie. (Prop. Am. Compl. ¶ 16.) Schreiber's principal negotiators were George Cawman and Brick Murphy. Winn-Dixie was represented by Rick McCook and Ken Kirschner. (Prop. Am. Compl. ¶¶ 17-18 *et seq.*) On February 13, 2002, Schreiber informed Winn-Dixie that Schreiber believed that the machines in the plant infringed the patents, and that Schreiber expected to resolve its infringement claims as part of the sale. (Am. Compl. ¶ 19.) In connection with this, Schreiber's negotiators represented to Winn-Dixie that it owned the '860 and '724 patents. (Prop. Am. Compl. ¶ 21.) In late March, 2002, Schreiber notified Winn-Dixie of the Federal Circuit's decision reinstating the jury award. Schreiber's negotiators told Winn-Dixie in light of the Federal Circuit's decision, Schreiber would insist on a substantial payment to resolve the patent dispute. (Prop. Am. Compl. ¶¶ 29-30.) At this time, the closing was only twelve days away, and Schreiber knew that Winn-Dixie was under significant economic pressure to sell the plant. (Prop. Am. Compl. ¶¶ 27-28.) As a result of these communications, Winn-Dixie's negotiators believed that it faced a substantial risk of a large jury award. (Prop. Am. Compl. ¶ 31.)

On March 26, 2002, Cawman, Murphy, McCook and Kirschner met to discuss the sale. Cawman argued that Schreiber was entitled to a substantial settlement with Winn-Dixie as a result of its success in the Kustner litigation. Schreiber presented a chart of its alleged damages. The chart was based on the jury award in the cases and assumed that Schreiber had valid claims back

to April, 1996. (Prop. Am. Compl. ¶ 35.) Winn-Dixie and Schreiber ultimately entered into a settlement agreement as part of the closing of the sale of the plant on April 2, 2002. (Prop. Am. Compl. ¶ 43; Kincaid Decl., Ex. 1.) The settlement agreement contemplated three payments of $2 million each, contingent upon Schreiber's success in the Kustner cases. (Prop. Am. Compl. ¶ 47-49; Kincaid Decl., Ex. 1 at 3-4.) Winn-Dixie alleges that the dollar amount ultimately agreed on for the sale was influenced heavily by the size and apparent validity of the jury award. (Prop. Am. Compl. ¶¶ 37-38, 42.)

Winn-Dixie made the first two payments as contemplated by the settlement agreement (Prop. Am. Compl. ¶¶ 48, 53), but decided to investigate the legitimacy of Schreiber's demand for the third payment. (Prop. Am. Compl. ¶ 59.) Winn-Dixie's investigation revealed that the trial court in the Kustner cases had vacated its earlier judgment in favor of Schreiber on February 20, 2004. (Prop. Am. Compl. ¶ 60.) The trial court vacated the judgment pursuant to Fed. R. Civ. P. 60(b)(4) when it learned that, while the Kustner cases were pending, Schreiber had assigned the '860 patent to a passive investment corporation and taken a non-exclusive license back, thus depriving Schreiber of the right to bring an action for its infringement. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 305 F. Supp.2d 939, 951 (E.D. Wis. 2004) ("A non-exclusive licensee has no constitutional standing to sue for infringement."). The trial court found that Schreiber had misrepresented the ownership of the '860 patent in discovery responses and at trial. *Id.* at 959. While the misrepresentation may have been inadvertent, the trial court also found that Schreiber, on advice of counsel, had re-acquired the patent after trial once it was discovered that Schreiber did not own it. Neither Schreiber nor its counsel advised the defendants or the trial court of this fact. *Id.* The court found that these misrepresentations and concealments were material to the judgment Schreiber obtained and thus vacated the judgment, in the alternative, under Fed. R. Civ. P. 60(b)(4) (void judgment)

3

and 60(b)(3) (fraud, misrepresentation, or other misconduct). The Federal Circuit subsequently reversed the trial court's holding under Fed. R. Civ. P. 60(b)(4) but affirmed the holding under Fed. R. Civ. P. 60(b)(3) and remanded the case for a new trial. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1206 (Fed. Cir. 2005). Schreiber has waived its right to money damages in the new trial, and has also waived its claim for infringement of the '724 patent.[1] *Id.* at 1207.

Winn-Dixie alleges that when negotiating the settlement agreement, Schreiber misrepresented to Winn-Dixie that:

    a. it owned the patents at relevant times;

    b. it was entitled to recover damages and lost profits from Winn-Dixie for infringement of the '860 Patent that occurred during periods that included times when it did not own the '860 Patent;

    c. it had secured a valid judgment against Kustner, Great Lakes and Beatrice . . . ; and

    d. the Federal Circuit's [February 27, 2002] decision was valid.

(Prop. Am. Compl ¶ 85.) Winn-Dixie also alleges that Schreiber concealed the following facts:

    a. Schreiber did not own the '860 Patent at all Material times, including times it represented to Winn-Dixie it could collect damages;

    b. for much of the relevant time period, Schreiber was a nonexclusive licensee of the '860 patent without standing to sue Winn-Dixie or any other party for infringement;

    c. Schreiber's subsidiary had transferred the '860 patent back to Schreiber in 1999;

---

[1]The PTO initially rejected the application for the '724 patent on the ground of obviousness in light of the '860 patent. However, the PTO subsequently agreed to issue the patent if Schreiber filed a terminal disclaimer agreeing that the patent would be enforceable only as long as it was commonly owned with the '860. By the time Schreiber filed the disclaimer, it had already transferred the '860 patent to the passive investment corporation. Schreiber never transferred the '724 patent. *Schreiber*, 305 F. Supp.2d at 947.

4

d. for much of the relevant time period, no party had standing to sue Winn-Dixie for lost profits relating to any infringement of the '860 Patent;

e. Schreiber misled the PTO regarding its ownership of the '860 Patent in order to induce the PTO into issuing the '724 patent;

f. Schreiber committed fraud upon the Court and the adverse parties in the [Kustner] Litigation;

g. at least one Schreiber representative had perjured himself during the [Kustner] Litigation;

h. the verdict in the [Kustner] litigation was the product of Schreiber's fraud on the Court and the perjury of its representatives; and

i. the ruling in favor of Schreiber by the Federal Circuit in the Litigation was the product of Schreiber's continuing its fraud on the Court.

(Prop. Am. Compl. ¶ 87.) Winn-Dixie also alleges that Schreiber failed to disclose the filing of a motion to vacate the judgment, and the subsequent granting of that motion, when it requested the second and third payments under the settlement agreement. (Prop. Am. Compl. ¶ 89.)

Winn-Dixie's proposed amended complaint states claims against Schreiber in twelve counts, some sounding in tort, some in contract, and some in equity:

I: Fraud in the Inducement

II: Rescission of Contract for Fraud

III: Rescission of Contract for Unilateral Mistake

IV: Rescission of Contract for Mutual Mistake

V: Breach of Contract–Duty of Good Faith and Fair Dealing

VI: Negligent Misrepresentation

VII: Money Had and Received

VIII: Reformation of Contract

IX: Unjust Enrichment

      X: Declaratory Relief

      XI: Breach of Contract

      XII: Strict Liability Misrepresentation

Schreiber challenges all twelve counts of the complaint as insufficiently pled under Fed. R. Civ. P. 9(b). Schreiber further argues that Counts I, II, V, VI, IX, and XII fail to state claims as a matter of law.

## ANALYSIS

Winn-Dixie has sought leave of the court to file an amended complaint. Such leave should be "freely given," Fed. R. Civ. P. 15(a), absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Schreiber argues that the original complaint should be dismissed and leave to amend should be denied on the ground of futility. The question of whether leave to amend should be denied on the ground of futility is tantamount to the question of whether the proposed amended complaint should be dismissed under Rule 12(b)(6). *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering the motion the court must accept all well-pleaded facts as true and draw all reasonable inferences in the non-moving party's favor. *Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951

6

(7th Cir. 1999); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). Federal notice pleading requires only that a plaintiff set out a "short and plain" statement of the claim providing a defendant with fair notice of her claim; fair notice does not require every element of a legal theory to be specifically set forth. *Scott*, 195 F.3d at 951. Conclusions or vague language are acceptable so long as a defendant can understand the claim. *See Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002).

Schreiber first argues that the entire proposed amended complaint must be rejected under Fed. R. Civ. P. 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) requires a plaintiff alleging fraud to identify "the who, what, where, when and how," *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), of the acts constituting the fraud. Winn-Dixie has done so here. It alleges that on or about March 26, 2002, George Cawman and Brick Murphy (on behalf of Schreiber) met with Rick McCook and Ken Kirschner (on behalf of Winn-Dixie) at the law offices of LeBoeuf, Lamb, Green & MacRae and made spoken misrepresentations concerning Schreiber's ownership of the patents and its entitlement to damages from Kustner, Great Lakes, and Beatrice. (Prop. Am. Compl. ¶¶ 32-40.) These allegations provide the who, what, where, when and how of the alleged fraud.

Schreiber next argues that the economic loss doctrine bars Winn-Dixie's claims for fraud in the inducement (Count I), negligent misrepresentation (Count VI) and strict liability

7

Case 2:04-cv-00794-WCG   Filed 06/08/05   Page 7 of 12   Document 33

misrepresentation (Count XII).[2] The economic loss doctrine bars tort claims for economic loss when the loss arises out of a contract between the parties. *Digicorp. Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 659 (Wis. 2003). Barred tort claims include those for negligent misrepresentation and strict liability misrepresentation. *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 242 (Wis. 2004). Thus, Counts VI and XII of the proposed amended complaint must be dismissed. Wisconsin does, however, recognize a narrow exception to the economic loss doctrine for certain fraud-in-the-inducement claims. In *Digicorp*, the Wisconsin Supreme Court held that Wisconsin permits such claims at least when the fraud is "extraneous to," *id.* at 657, the contract.[3] By contrast, the economic loss doctrine bars recovery when the fraud is "interwoven with the contract." *Id.*

The distinction between fraud extraneous to a contract and fraud interwoven with a contract is somewhat unclear. The Wisconsin Supreme Court derived its rule from *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.*, 532 N.W.2d 541 (Mich. Ct. App. 1995), a decision of the Michigan Court of Appeals. *Huron Tool* distinguished between two types of cases. In cases "where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior," *id.* at 545, claims for fraud in the inducement are allowed. In cases "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold,

---

[2]Schreiber also argues that the economic loss doctrine bars Winn-Dixie's claim for rescission of the contract for fraud (Count II). Rescission for fraud, however, is an equitable remedy, distinct from the tort action for fraud. *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1272 (7th Cir. 1990).

[3]Five justices participated in *Digicorp*. Two (Justices Bradley and Bablitch) would have made an exception to the economic loss rule for all fraud-in-the-inducement claims. Two (Justices Crooks and Prosser) would have made an exception only for fraud in the inducement claims extraneous to the contract. One (Justice Sykes) would have made no exception.

8

the other party is still free to negotiate warranty and other terms to account for possible defects in the goods," *id.*, and the economic loss doctrine bars claims for fraud in the inducement.

While this case does not involve the sale of goods, Schreiber did "sell" a release of its infringement claims to Winn-Dixie. To induce Winn-Dixie to "buy," Schreiber allegedly misrepresented the validity and strength of those claims through its representations about its ownership of the patents and the validity of the judgment in the Kustner litigation. These were, in essence, representations concerning the quality or character of Schreiber's released claims. Moreover, the contingencies in the settlement agreement contemplated the possibility that Schreiber's claims might not be as strong as Schreiber asserted they were.[4] (Prop. Am. Compl. ¶¶ 47-49; Kincaid Decl., Ex. 1 at 3-4.) In light of all this, the court holds that Schreiber's misrepresentations were interwoven with the contract and may not serve as the basis of a fraud-in-the-inducement claim.

Schreiber also argues that Count IX of the proposed amended complaint, entitled "unjust enrichment," should be dismissed because it seeks damages already sought in other counts. Winn-Dixie readily concedes that it cannot seek both damages for breach of contract and damages for unjust enrichment, but contends that an unjust enrichment claim will lie if the court, sitting in equity, rescinds the contract, as Winn-Dixie asks it to do in Counts III and IV. The parties'

---

[4]The alleged fraud in this case contrasts with the fraud held to be extraneous to the contract in *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2004 WL 1057806 (Wis. Ct. App. May 12, 2004). The plaintiff in *Kaloti* had been in the business of purchasing food products from the defendants and distributing them to retailers. The defendant decided to begin distributing its own products, but withheld this information from the plaintiff at the time it solicited another sale to the plaintiff. Having purchased the defendant's products, the plaintiff was unable to distribute them to its usual customers, who were now buying directly from the defendant. The plaintiff sued, alleging fraud in the inducement with respect to the contract of sale. The court held that because the contract in no way addressed the defendant's marketing strategy, the fraud alleged was extrinsic to the contract and actionable under *Huron Tool*. *Kaloti*, 2004 WL 1057806 at *4.

9

argument is one over the semantics of equity rather than its substance. A claim for unjust enrichment arises in equity. *Madison Gen. Hosp. v. Haack*, 369 N.W.2d 663, 666 (Wis. 1985). Its elements are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value." *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978). "[D]amages in an unjust enrichment claim are measured by the benefit conferred upon the defendant." *Ramsey v. Ellis*, 484 N.W.2d 331, 333 (Wis. 1992). Rescission is also an equitable remedy, *Eisenberg v. Continental Casualty Co.*, 180 N.W.2d 726, 734 (Wis. 1970), and entitles the prevailing plaintiff to restitution. *Head & Seeman, Inc. v. Gregg*, 311 N.W.2d 667, 669 (Wis. 1981). The measure of damages in an action for restitution is the amount of money received by the defendant. Restatement of Restitution, §§ 150 (1937). Winn-Dixie's unjust enrichment claims and rescission claims thus overlap. Rescission and restitution, rather than unjust enrichment, is the proper title for the equitable relief sought here. In the interest of simplifying the complaint, the court will thus dismiss Count IX. No diminution of Winn-Dixie's equitable rights will be effected thereby.

Schreiber finally argues that Winn-Dixie's claim for breach of the duty of good faith and fair dealing (Count V) must be dismissed. Under Wisconsin law, every contract implies a duty of good faith and fair dealing between the parties. *M&I Marshall & Ilsley Bank v. Schlueter*, 655 N.W.2d 521, 524-525 (Wis. Ct. App. 2002). The duty of good faith and fair dealing serves "to give the parties what they would have stipulated for expressly if at the time of making the contract they had had complete knowledge of the future and the costs of negotiating and adding provisions to the contract had been zero." *Market Street Assocs. Ltd. Partnership v. Frey*, 941 F.2d 588, 596 (7th Cir. 1991) (applying Wisconsin law). Since the duty of good faith and fair dealing is contractual,

10

*id.* at 594, it applies to conduct subsequent to the formation of a contract, not to conduct before formation. *Hauer v. State Bank of Wautoma*, 532 N.W.2d 456, 463 (Wis. Ct. App. 1995).

Schreiber correctly argues that Winn-Dixie may not assert a claim for breach of the duty of good faith and fair dealing arising out of Schreiber's conduct preceding the settlement agreement. Neither of the cases cited by Winn-Dixie establishes that a party may assert a claim for breach of the duty of good faith and fair dealing arising out of conduct preceding the formation of a contract. Winn-Dixie cites *Van Lare v. Vogt, Inc.*, 683 N.W.2d 46 (Wis. 2004), for the proposition that "Wisconsin has a long-standing principle that parties need a background of truth and fair dealing in commercial relationships and that a party to a business transaction is under a duty to disclose facts basic to the transaction if he knows that the other is about to enter into the transaction with a mistaken or incomplete understanding of those facts, and the other party could reasonably expect a disclosure of those facts." *Id.* at 53-54. The context in which this statement occurs makes clear that the duty to disclose arises in tort law, as part of the fraud-in-the-inducement exception established by *Digicorp*. Winn-Dixie also calls the court's attention to *Market Street Assocs.*, in which the Seventh Circuit, applying Wisconsin law, declared that "conduct that might not rise to the level of fraud may nonetheless violate the duty of good faith in dealing with one's contractual partners and thereby give rise to a remedy under contract law." *Id.* at 594. When the statement is read in context, however, it is clear that the Seventh Circuit was talking about post-formation conduct–the only sort of conduct at issue in *Market Street Assocs*.

Nevertheless, the court will not dismiss Count V of the proposed amended complaint in its entirety. Count V alleges, in part, that Schreiber's conduct after the parties entered the settlement

11

agreement violated the duty of good faith and fair dealing. Count V will therefore be dismissed only insofar as it arises out of conduct preceding the settlement agreement.[5]

**CONCLUSION**

For the foregoing reasons, the court will grant Winn-Dixie leave to file its proposed amended complaint. Winn-Dixie's claims for fraud in the inducement (Count I), negligent misrepresentation (Count VI), unjust enrichment (Count IX), and strict liability misrepresentation (Count XII) will be dismissed. Winn-Dixie's claim for breach of the duty of good faith and fair dealing (Count V) will also be dismissed insofar as it arises out of Schreiber's conduct preceding the settlement agreement.

**IT IS THEREFORE ORDERED** that Winn-Dixie's motion for leave to file amended pleadings is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that Schreiber's motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** The motion to dismiss is **GRANTED** with respect to Counts I, VI, IX, and XII of the amended complaint, and with respect to Count V insofar as it arises out of Schreiber's conduct preceding the settlement agreement. Schreiber's motion to dismiss is otherwise **DENIED.**

Dated this  8th  day of June, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

[5]Count V will also be dismissed insofar as it seeks punitive damages. *See Weiss v. United Fire and Cas. Co.*, 541 N.W.2d 753, 763 (Wis. 1995) ("[P]unitive damages [are not] available for breach of contract.")